UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER STEVENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-CV-49 RLW |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Jennifer Stevenson brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. For the reasons that follow, the decision of the Commissioner is reversed.

### I.  Procedural History

Plaintiff protectively filed an application for DIB under Title II on July 30, 2019. (Tr. 281-82). Plaintiff claims she has been unable to work since March 21, 2019, due to bipolar disorder, generalized anxiety disorder, major depressive disorder, and attention deficit hyperactivity disorder (ADHD). (Tr. 144). Plaintiff's application was denied on initial consideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). On September 24, 2020, the ALJ held a hearing. Due to the extraordinary circumstances presented by the COVID-19 pandemic, the hearing was held by telephone pursuant to 20 C.F.R. § 404.936(c) and § 416.1436(c). (Tr. 25-65). Plaintiff testified concerning her past work, daily activities, and mental health treatment. The ALJ also received testimony from vocational expert ("VE") Carma Mitchell. Id. On October 13, 2020, Plaintiff's counsel requested a supplemental hearing. On

March 4, 2021, the ALJ held a supplemental telephone hearing.  Medical expert Alfred Jonas, M.D., testified and was cross examined by Plaintiff's counsel.  Plaintiff and Denise Waddell, a VE, also testified at the second hearing.  (Tr. 66-122)

On April 21, 2021, the ALJ issued an unfavorable decision finding Plaintiff not disabled. (Tr. 10-20). Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. On November 17, 2021, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

In this action for judicial review, Plaintiff claims the ALJ's decision is not supported by substantial evidence on the record as a whole.  Specifically, Plaintiff argues that in reaching her conclusion about Plaintiff's residual functional capacity to perform sustained work, the ALJ failed to evaluate and discuss the consistency and supportability of the medical opinions, as required by the applicable regulation.  Plaintiff further argues that the ALJ improperly discounted Plaintiff's self-reported symptoms of mental illness and evidence regarding the cyclical nature of her mental disorder.  Plaintiff requests that the decision of the Commissioner be reversed, and the matter remanded for an award of benefits or for further evaluation.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II. Legal Standard

To be eligible for DIB and SSI under the Social Security Act, plaintiff must prove she is disabled.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Sec'y of Health & Hum. Servs., 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A).  An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Second, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities.  If the claimant's impairment is not severe, then he is not disabled.  Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 416.920(a)(4)(iii), (d).

At the fourth step, if the claimant's impairment is severe but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i).  An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011); see also 20 C.F.R. § 416.945(a)(1). Ultimately, the claimant is responsible for providing evidence relating to his RFC, and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the

claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

In the fifth step, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production shifts to the Commissioner to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy.  See Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  Id. In the fifth step, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016).

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  Id. (internal quotation marks and citations omitted.  Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's

decision." Reece v. Colvin, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." Id. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." KKC ex rel. Stoner v. Colvin, 818 F.3d 364, 370 (8th Cir. 2016).

### III.  The ALJ's Decision

In a decision dated April 21, 2021, the ALJ applied the above five-step analysis and found Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of March 21, 2019 through her date last insured of March 31, 2021; Plaintiff has severe mental impairments " variously diagnosed as bipolar I disorder, depression, attention deficit hyperactivity disorder (ADHD), generalized anxiety disorder, and substance abuse"; but Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Tr. 12-13).

As for Plaintiff's RFC, the ALJ found Plaintiff retained the ability to perform work at all exertional levels, but she had the following nonexertional limitations:

> [Plaintiff] is able to understand, remember, and carry out simple instructions consistent with unskilled work. [Plaintiff] can perform only simple decision-making related to basic work functions. [Plaintiff] can tolerate only minor, infrequent changes within the workplace. [Plaintiff] can tolerate occasional interaction with coworkers and supervisors but in small numbers and for short periods. [Plaintiff] can perform no tandem tasks or very close interaction with others in the workplace. Work is done relatively independently with relatively minimal, superficial interaction with the general public.  [Plaintiff] should avoid work involving intense or extensive interpersonal interaction, handling complaints or dissatisfied customers.

(Tr. 14).

At the fourth step, the ALJ found Plaintiff was unable to perform her past relevant work. (Tr. 18). At the fifth step, relying on the testimony of a VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which the Plaintiff could perform, including representative occupations such as cleaner, router, and document preparer.  (Tr. at 19-20).  At the end of her analysis, the ALJ concluded Plaintiff was not disabled.  (Tr. 20).

## IV.  Discussion

In her Brief in Support of Complaint, Plaintiff argues that the ALJ did not make her RFC determination based on substantial evidence in the record.  Specifically, she faults the ALJ for relying on the opinions of Drs. Akeson and Jonas, non-examining medical sources.  Plaintiff argues that Dr. Jonas's testimony is not credible because he opined, contrary to the opinions of Plaintiff's treating doctors, that there was insufficient evidence to support a diagnosis of mental illness and that Plaintiff had no limitations in any areas.  As for Dr. Akeson, Plaintiff argues that he based his opinion on records from only four medical visits, during which Plaintiff's mental status exam findings were normal, and he ignored medical records in which more severe symptoms were described.  Plaintiff also faults the doctor for failing to take into account when evaluating her daily activities the fact that symptoms of her mental illness are cyclical.  Plaintiff also faults the ALJ for failing to provide an adequate explanation as to why she found these two opinions to be more persuasive, as opposed to the two other medical opinions in the record, both of which were from treating medical sources.

### A.      Applicable Law

For claims like Plaintiff's that are filed on or after March 27, 2017, an ALJ evaluates medical opinions and administrative medical findings pursuant to 20 C.F.R. § 404.1520c.  These rules provide that the Social Security Administration "will not defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is to evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes: (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies." 20 C.F.R. § 404.1520c(a)-(c).

Under the new regulations, supportability and consistency "are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions and, therefore, an ALJ must explain how she considered the factors of supportability and consistency in her decision.[1] 20 C.F.R. § 404.1520c(b)(2). An ALJ may, but is not required to, explain how she considered the remaining factors. Id., Nolen v. Kijakazi, 61 F.4th 575, 577 (8th Cir. 2023) ("[h]aving considered the supportability and consistency of [the doctor]'s opinion, the ALJ did not need to discuss other factors"). See also Brian O. v. Comm'r of Soc. Sec., No. 1:19-CV-983-ATB, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still

---

[1]"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'")(alterations omitted)).

At the outset, the Court notes that Plaintiff's Brief in Support of Complaint cites to some case law that is inapplicable to the new regulations addressing the persuasiveness and weight of medical opinions. The Court finds, however, that under the new regulations, the ALJ failed to properly support the weight she assigned to medical opinions concerning Plaintiff's mental impairments, and that her conclusions regarding the impact Plaintiff's mental impairments have on her RFC are not substantially supported by the record as a whole.

### B.    ALJ's Evaluation of Medical Opinion Evidence Regarding Plaintiff's Mental Impairments

#### 1.    Dr. Jonas's opinion

On September 30, 2020, consulting psychiatrist, Alfred Jonas, M.D., reviewed evidence in the record as of that date and was asked to give his opinion as to Plaintiff's ability to do work-related activities on a sustained basis, despite her impairments.[2] (Tr. 469). Dr. Jonas concluded there was no basis of support for Plaintiff's diagnoses and opined she was not limited in any way. He found she had no limitations in her ability to understand, remember, and carry out instructions, to concentrate, persist, or maintain pace, and to adapt or manage oneself. He indicated that Plaintiff had "seemingly none or mild" limitations in the ability to interact appropriately with supervisors, co-workers, and the public, as well as to respond to changes in the routine work setting. (Tr. 469-71).

Dr. Jonas also provided oral testimony at a hearing before the ALJ. He testified that Plaintiff's diagnoses of bi-polar disorder and ADHD were made by Plaintiff's doctors, "but I cannot tell you that they are reasonably confirmable." (Tr. 76). Dr. Jonas did, however, testify

---

[2]"Sustained basis" is defined to mean "the ability to perform work-related activities eight hours a day for five days a week, or an equivalent work schedule." (Tr. 469).

that it was "clear" Plaintiff has "a substance abuse issue." (Tr. 75). According to Dr. Jonas,

Plaintiff's mental diagnoses were not substantiated, because the diagnoses were made on the basis

of Plaintiff's reported symptoms, "even though the mental state examinations were normal." (Tr.

76). At the hearing, Dr. Jonas also testified that Plaintiff was not limited in her ability to do work.

The ALJ did not adopt Dr. Jonas's opinion in its entirety. In evaluating Dr. Jonas's medical

opinion, the ALJ wrote:

> In September 2020, Dr. Jonas responded to the undersigned's request for medical interrogatories [ ]. Dr. Jonas opined that [Plaintiff] had no significant mental symptoms based on the available evidence. Dr. Jonas asserted that the available treatment records barely supported a medically determinable mental impairment. Therefore, any findings of significant limitations were based, in large part, on the [Plaintiff]'s subjective complaints. Dr. Jonas asserted that [Plaintiff] appeared to be a fully functioning wife, mother, and homemaker.
>
> Dr. Jonas also appeared and testified at the supplemental hearing held on March 4, 2021. Dr. Jonas explained that the record supported [Plaintiff] was functioning well, as her mental symptoms were under control with her psychotropic medications. Dr. Jonas cited to [exhibits] that support overall normal functioning, as well as evidence that [Plaintiff] is involved with the raising of her children [ ]. However, Dr. Jonas asserted [Plaintiff] would continue to experience exacerbations of her symptoms at times in spite of medical compliance. Dr. Jonas asserted that the extreme symptoms [Plaintiff] alleged at the hearing were never observed by a medical provider and are not otherwise supported by her mental health treatment history.
>
> The undersigned finds that Dr. Jonas' opinion is not fully persuasive except for his overarching assertion that [Plaintiff] has the mental capacity for work. Although the [Plaintiff]'s mental health treatment history has not been extensive, the record does support that she participates in regular treatment and manages her mental symptoms with medication. Therefore, the undersigned finds that [Plaintiff] is reasonably more limited than Dr. Jonas opined based on her treatment history and testimony.

(Tr. 18) (internal citations to the record omitted).

The ALJ states that she declines to adopt Dr. Jonas's opinion except for his conclusion that

Plaintiff has the mental capacity for work – the ultimate question at issue. But the ALJ did more

than that. The ALJ discredited Plaintiff's treating doctors' opinions based on her finding that Dr.

Jonas's opinion was more credible in that it was more consistent with the record as a whole. In

short, the ALJ found that Dr. Jonas's opinion was more persuasive than the opinions from Plaintiff's treating doctors. The issue before the Court is whether the ALJ properly evaluated Dr. Jonas's medical opinion using the factors of 20 C.F.R. § 404.1520c(b)(2), including the requirement that the ALJ explain how she considered the factors of supportability and consistency. Bonnett v. Kijakazi, 859 F. App'x 19, 20 (8th Cir. 2021) (remanding because ALJ failed to address consistency factor). The Court finds that with regard to Dr. Jonas's opinion, the ALJ failed to properly consider and address issues of supportability and consistently in her decision.

First, as to supportability, Dr. Jonas stated a number of times during his testimony and in his report that he did not have enough information to form an opinion as to Plaintiff's diagnoses and ability to work. In fact, when Dr. Jonas was asked on Medical Statement form, "Is there sufficient objective medical and other evidence to allow you to form opinions about the nature and severity of the claimant's impairment(s) during the relevant time period?", Dr. Jonas checked the box "No." (Tr. 472). He then elaborated that he needed records of Plaintiff's reported hospitalizations, earnings, and "evidence of substance and stability of work." (Id.). There is no evidence in the record that Dr. Jonas was ever provided with the additional information he required. And later at the hearing when asked about his opinion as to Plaintiff's ability to work, Dr. Jonas also stated, "I am at the disadvantage of not enough information. … I don't have enough information." (Tr. 90).

Despite having stated he lacked enough information, Dr. Jones went ahead and offered his opinion that Plaintiff retained the ability to work with no limitations. At the hearing, Dr. Jonas explained that he would be shocked if someone who was impaired as Plaintiff's treating physicians indicated, could put together a reasonable work history as Plaintiff had. But his opinion was based on an incomplete record. Dr. Jonas admitted he did not have access to Plaintiff's earnings or information about what her past jobs entailed. And there is evidence that Dr. Jonas filled in the

missing information with assumptions.  For example, during the hearing, Dr. Jonas pointed to the fact that in December 2011, Plaintiff was made a supervisor at a massage clinic and, therefore, someone must have thought she was doing her job well enough to promote her.  (Tr. 81).  But elsewhere in the record, there is evidence that as a massage clinic supervisor, Plaintiff worked two days a week for 4 hours, which is not sustained work.  There is also evidence in the record that Plaintiff worked a number of part-time jobs, and that she was fired from jobs for disruptive behavior and insubordination, including by her sister.  Dr. Jonas did not have enough information to form an opinion as to Plaintiff's ability to perform sustained work, and the ALJ should not have adopted his ultimate conclusion that Plaintiff has the mental capacity for work without addressing the supportability of his opinion.

Second, the ALJ failed to address the fact that in reaching his conclusion Plaintiff had the mental ability to perform work, Dr. Jonas rejected <u>any</u> self-reported symptoms or episodes that would support the diagnoses of bipolar disorder, anxiety, or ADHD.  Dr. Jonas testified that "all of the available suggestions of problems come from [Plaintiff]'s report.  They are not observed." (<u>Id.</u>).

> But I would not interpret anything in this record to be a reasonable representation or support for the theory of bipolar disorder. It's an inadequate record to do that and it's made worse by [exhibits] where the two treating people, the psychologist and the psychiatrist say that [Plaintiff] is very, very functionally impaired. In [one exhibit], the treating psychologist says almost everything is either marked or extreme and yet, [Plaintiff] keeps appointments, she takes care of her children. She looks after their schooling. She wants full custody. That is not the description of somebody who has all marked and extreme impairments.  So we are at a huge disadvantage with this record. And I'm not saying [Plaintiff] does not have bipolar disorder, I'm saying there's no basis in this record to reassure us that she does.

(Tr. 100-01).

When Plaintiff's attorney pointed to evidence in the medical records of cycling, manic phases, panic attacks, depression, and hypomania – all notations by her treating doctors – Dr. Jonas dismissed this evidence as self-reported by Plaintiff.  Dr. Jonas offered the opinion during his

testimony that bipolar disorder is vastly over-diagnosed because patients lie or misrepresent their

symptoms.

> Dr. Jonas: That's why bipolar disorder is over diagnosed because people just say this stuff and it is not true.
>
> Attorney: People say it.
>
> Dr. Jonas: Yes.
>
> Attorney: Are you suggesting that medical doctors throw this around and they prescribe strong medications to people, even though it's not necessary?
>
> Dr. Jonas: Absolutely without question.
>
> Attorney: And you think that this record perhaps suggests just that?
>
> Dr. Jonas: The record does not provide evidence that [Plaintiff] has bipolar disorder. … She has ability of function, of work function. She's functioning as a mother and a homemaker. She's not getting intensive attention from her treaters. I don't see the bipolar disorder here.

(Tr. 101-3)

> Attorney: Don't doctors get trained not to fall into that trap [of over diagnosing]?
>
> Dr. Jonas: I see.
>
> Attorney: Well, I'm just saying are you saying that doctors over diagnose ---
>
> Dr. Jonas: Yeah.
>
> Attorney: and that this is an example of it.
>
> Dr. Jonas: They over diagnose, yeah.

(Tr. 99).

Despite being diagnosed with bipolar disorder by two treating medical sources, Dr. Jonas

found there was no credible, objective evidence to support Plaintiff's diagnoses.  Based on the

record he reviewed, Dr. Jonas believed that Plaintiff's two treating doctors had never observed

Plaintiff behaving in a manner consistent with bipolar disorder, anxiety, or ADHD, despite the fact

that they had treated her for many years, in one case since 1990.  He concluded their diagnoses

were based on Plaintiff's self-reporting, which in his view was unreliable.  In his written opinion, Dr. Jonas wrote: "Apparent substance abuse.  No other diagnosis confirmable with available records.  Diagnoses apparently made on the basis of claimant's reports of symptoms, despite normal exams." (Tr. 472).  Dr. Jonas opined that with no diagnoses, Plaintiff had no impairments, and she was able to work.

But as discussed in more detail below, Plaintiff's exams were not normal.  There were several notations in the medical records about Plaintiff being labile, severely anxious, agitated, and having abnormal thought processes.  And to treat her symptoms, Plaintiff was taking a number of different psychiatric medications, which her psychiatrist altered frequently.  The ALJ did not address the inconsistencies between the doctor's treatment notes and Dr. Jonas's testimony.  She also did not address Dr. Jonas's assertions that self-reported symptoms should not be considered at all because patients lie and doctors over-diagnose.

At the same time, Dr. Jonas based his opinion that Plaintiff had no impairments largely on his finding that Plaintiff was "fully functional as wife, mother, and homemaker." (Tr. 473).  Ironically, all the evidence of Plaintiff's daily activities upon which Dr. Jonas relies was based on her self-reporting.  There is no "objective" evidence in the record of Plaintiff functioning as a "homemaker."  Furthermore, Dr. Jonas only credits Plaintiff's self-reporting as to how she is managing at home when it supports his conclusion.  He discredits her reports that do not support his conclusion.  There is ample evidence in the record that Plaintiff is not managing as a "homemaker"; that she is struggling with taking care of her children and doing housework.  Plaintiff testified at the hearing that at times she does not feed her children and they must feed themselves; that she cannot get out of bed; that it takes her hours to complete chores, and that she is stealing money from her son.  (Tr. 41, 43-44, 343-45).  There are also notations in the medical records that Plaintiff struggles with completing housework, retreats to the garage, and does not get

13

out of bed or shower.  The record as a whole does not support Dr. Jonas's finding that Plaintiff is "fully functioning" as a homemaker – the finding upon which Dr. Jonas largely based his opinion that Plaintiff retains the mental capacity to work.  The ALJ accepted Dr. Jonas's opinion that Plaintiff was fully functioning at home without addressing whether it was supported by and consistent with the record.

There were other inconsistencies in Dr. Jonas's report and opinion which the ALJ did not address.  For example, Dr. Jonas concluded that Plaintiff had a problem with substance abuse.  In fact, when asked about his medical opinion at the hearing, the first thing Dr. Jonas said was that it was clear Plaintiff has a substance abuse problem.  (Tr. 75).  But when questioned about substance abuse being a factor in his conclusion, Dr. Jonas admitted the only substance he was referring to was marijuana use.  Plaintiff, however, had a medical marijuana card, and testified that she received the card from a doctor and used medical marijuana to help with her anxiety.  (Tr. 48). When Plaintiff's attorney pointed out to Dr. Jonas that Plaintiff has a medical marijuana card from a doctor, Dr. Jonas stated he did not know this fact, or even that medical marijuana is legal in Missouri.  (Tr. 97).  This important issue, which goes to supportability and consistency, was not addressed by the ALJ.

Under the new regulations, an ALJ must explain how she considered the factors of supportability and consistency in determining the persuasiveness of medical opinions.  See 20 C.F.R. § 404.1520c.  In weighing Dr. Jonas's opinion, the ALJ failed to adequately address either of these factors, let alone the other factors of § 404.1520c.  See 20 C.F.R. § 404.1520c(a)-(c). Although she did not adopt Dr. Jonas's opinion in total, she did adopt his ultimate conclusion that Plaintiff has the capacity to work, and she found Dr. Jonas's opinion more persuasive and consistent with the record than those of Plaintiff's two treating doctors.  (Tr. 24).  Dr. Jonas, however, formed opinions about Plaintiff's capacity to work without having sufficient information

about Plaintiff's work history and past medical treatment, by disregarding out of hand any self-reported symptoms of mental illness, and by basing his conclusions on information that was either not in the record or by selectively identifying supporting facts while ignoring facts that detracted from his conclusions.

Dr. Jonas's opinion was not supported by or consistent with the record as a whole in many significant respects, and the ALJ failed to address these factors.  For these reasons, the Court finds the ALJ failed to properly evaluate the persuasiveness of Dr. Jonas's opinion under 20 C.F.R. § 404.1520c, which is reversible error.  Lucus v. Saul, 960 F.3d 1066, 1069 (8th Cir. 2020) ("failure to comply with SSA regulations is more than a drafting issue, it is legal error").  The Court further finds that the lack of supportability and inconsistencies between Dr. Jonas's opinion and evidence in the record are significant because, as discussed below, the ALJ used Dr. Jonas's testimony to discredit the opinions of Plaintiff's two treating doctors.

### 2.  Dr. Blumberg's opinions

The ALJ completely discounted the medical opinion of Plaintiff's treating psychologist, Samuel Blumberg, Ph.D.  Dr. Blumberg completed a medical source statement dated July 30, 2019.  Dr. Blumberg noted that he sees Plaintiff twice a month, and she has been his patient since 1990.  He noted her diagnoses are Bipolar I, ADHD, and generalized anxiety disorder, which have been medically documented for over two years.  Dr. Blumberg opined that Plaintiff had marked and extreme limitations in all four categories: understanding, remembering, or applying information; interacting with others; concentration, persistence, or maintaining pace; and adapting and managing oneself.  (Tr. 401).  He also opined that Plaintiff would be absent from work more than three times a month as a result of her impairment.  (Tr. 400).

Dr. Blumberg completed a second medical source statement on August 12, 2020.  Dr. Blumberg's opinion remained unchanged.  He opined that Plaintiff was markedly or extremely

15

limited in all four categories: understanding, remembering, or applying information; interacting

with others; concentration, persistence, or maintaining pace; and adapting and managing oneself.

(Tr. 438).  And that she would be absent from work more than three times a month.  (Tr. 437).

In the record, there is a statement from Dr. Blumberg dated August 27, 2018, in which he

wrote:

> I do not see [Plaintiff] being able to work at all at this time, probably permanently. She has 3 issues that negatively impact her ability to work. First, in spite of several powerful psychiatric medications, her moods still cycle as consistent with disorder. In her manic phase, she is impulsive, irritable, hyper-sexual with poor boundaries and hyperactivity.  She over-spends and is overly talkative.  When depressed, [Plaintiff] is negative, isolated, suicidal at times, and lethargic, spending most of her time in bed.  These cycles still happen with regularity.  Second, her anxiety causes her to avoid uncomfortable situations, withdraw and dwell upon criticisms or conflict.  Her anxiety is typically expressed somatically in the form of GI symptoms.  Third, [Plaintiff] is prone to a violent, impulsive rage at affronts or treatment she perceives as unfair.  She is currently on probation for assault that occurred her workplace.  There was a disagreement over whose turn it was to make a pizza delivery and she became enraged.  After arguing with her boss, [Plaintiff] jumped in her car and struck a co-worker with her car as she was speeding out of the parking lot.  I believe [Plaintiff] is too prone to mood swings, too anxious, and too angry and violent to be in a workplace.

(Tr. 425)

> Dr. Blumberg wrote a second statement dated May 11, 2020, in which he wrote:

> As with most individuals with Bipolar Disorder, sleep consistency and hygiene are essential.  [Plaintiff] has a history of becoming manic when her sleep is disrupted. She has children at home so it is unclear how she could have a healthy sleep cycle with a night job.  In addition, new situations cause her anxiety and panic which leads to hostile outbursts in the workplace.  I continue to view [Plaintiff] as completely disabled.

(Tr. 424).

The ALJ did not find Dr. Blumberg's opinions to be persuasive.  In rejecting Dr.

Blumberg's opinions, the ALJ wrote:

> The undersigned finds that these opinions by Dr. Blumberg are not persuasive. Dr. Blumberg's opinions are supported by his medical treatment notes, yet Dr. Blumberg's mental health treatment notes are sparse and almost illegible. [ ] The undersigned finds that the testimony of medical expert, Alfred Jonas, M.D, from

16

> the hearing is more consistent with the overall evidence, including [Plaintiff]'s admissions that she is functioning reasonably well when she is compliant with treatment and medication. Dr. Jonas testified that such extreme findings are based, in large part, on [Plaintiff]'s subjective complaints, as there is no evidence in the record that any medical provider has ever observed [Plaintiff] behaving in a marked or extreme manner

(Tr. 16).

In evaluating Dr. Blumberg's opinions, the ALJ did not properly explain how she considered the factors of supportability and consistency in determining the persuasiveness of his medical opinions. See 20 C.F.R. § 404.1520c. First, she states that Dr. Blumberg's opinions are consistent with his treatment notes, but then faults his notes for being sparse and "almost illegible." The ALJ provides no further analysis in her decision as to how Dr. Blumberg's treatment notes support his opinions, and in what ways they are lacking in support.

Plaintiff visited Dr. Blumberg, who has treated her since she was twelve years old, approximately once every four weeks. Throughout his medical exam records, which were dated December 2018 through July 2020, Dr. Blumberg made several notations about Plaintiff that support his medical opinion, such as "labile affect and irritable mood"; "severely anxious affect and mood"; "severely anxious and frustrated mood and affect"; "severely depressed and frustrated affect"; "depressed mood with abnormal thought process;" "thought process was abnormal"; "regression was noted"; "elevated affect and severely anxious mood, and psychomotor agitation"; "manic"; "panic attacks were reported"; "has a lack of motivation"; "going through hypomania and having panic attacks"; "cycl[ing] with irritability, hypersexuality and spending"; "frustrated mood and affect and angry mood"; "manic thought process and psychomotor agitation"  (Tr. 408, 410-12, 416-17, 420-22, 428-35, 444).  In her decision, the ALJ did not address any of these records or notations.[3]

_____

[3] As stated above, the ALJ criticizes Dr. Blumberg's treatment notes as being sparse and "almost illegible."  If the ALJ had difficulty reading them, or required further information, she

During some visits with Dr. Blumberg, Plaintiff reported she was doing better, but there was not an overall trend showing Plaintiff was improving or deteriorating.  Instead, Plaintiff's mental health symptoms waxed and waned, which is not unusual.  Lillard v. Berryhill, 376 F. Supp. 3d 963, 984 (E.D. Mo. 2019) ("recognition must be given to the instability of mental impairments and their waxing and waning nature after manifestation.") (citing Andler v. Chater, 100 F.3d 1389, 1393 (8th Cir. 1996)); see also Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").  Thus, Plaintiff's stable and less stable periods as reflected in the medical records are consistent with chronic mental disability, and with Dr. Blumberg's opinion that Plaintiff has marked and extreme limitations in some areas, including using reason and judgment to make work-related decisions; cooperating with others; handling conflicts with others; responding to requests, suggestions, criticism, corrections, and challenges; keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness; sustaining an ordinary routine and regular attendance at work; managing psychological based symptoms; and distinguishing between

---

could have contacted Dr. Blumberg for clarification.  Social security hearings are to be non-adversarial, and an ALJ has a duty to develop the record fully and fairly.  Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). This duty applies even in cases where the claimant is represented by counsel.  Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). "The Commissioner and the claimant's attorney both share the goal of ensuring that deserving claimants who apply for benefits receive justice." Medley v. Berryhill, No. 2:17-CV-88 NAB, 2019 WL 1115527, at *7 (E.D. Mo. Mar. 11, 2019) (citing Battles v. Shalala, 36 F.3d 43, 44 (8th Cir. 1994)). "[I]llegibility of important evidentiary material can warrant a remand for clarification and supplementation."  Bishop v. Sullivan, 900 F.2d 1259, 1262 (8th Cir. 1990) Miller v. Heckler, 756 F.2d 679, 680–81 (8th Cir. 1985); Brissette v. Heckler, 730 F.2d 548, 550 (8th Cir. 1984)). The Court is reversing and remanding this case on grounds other than the legibility of Dr. Blumberg's treatment notes, but on reevaluation of Plaintiff's claim, if the ALJ has difficulty reading Dr. Blumberg's treatment notes or requires additional information or clarification, she should contact Dr. Blumberg, especially considering that he has treated Plaintiff for over thirty-two years.

acceptable/unacceptable work performance. (Tr. 438). This is also consistent with his statement dated August 27, 2018.

Second, and perhaps more importantly, the ALJ states that she finds Dr. Jonas's testimony to be more consistent with the record than Dr. Blumberg's opinions. But as discussed above, Dr. Jonas's testimony was not supported by or consistent with the record as a whole in many significant respects, and the ALJ failed to address supportability issues or reconcile significant inconsistencies between the record and his findings. And the notations in Dr. Blumberg's medical exam records refute Dr. Jonas's finding that there is a lack of objective medical evidence in the record to substantiate that Plaintiff has mental impairments at all, or the diagnoses of bipolar disorder and anxiety.

In sum, in discounting Dr. Blumberg's opinions, the ALJ did not specifically address how his opinions were inconsistent with or not supported by the record, which she was required to do under the new regulations. See 20 C.F.R. § 404.1520c(a)-(c). While an ALJ must consider but need not address the remaining factors of § 404.1520c(a)-(c), there is nothing to indicate that in the ALJ's evaluation of Dr. Blumberg's opinions she considered Dr. Blumberg's thirty-plus year treating relationship with Plaintiff, or his specialty in psychology. See 20 C.F.R. § 404.1520c(a)-(c). For these reasons, the Court finds the ALJ failed to properly evaluate the persuasiveness of Dr. Blumberg's opinions under 20 C.F.R. § 404.1520c, which is reversible error. Lucus, 960 F.3d at 1069 ("failure to comply with SSA regulations is more than a drafting issue, it is legal error"), Brueggemann v. Barnhart, 348 F.3d 689, 694 (8th Cir. 2003) (contrasting a "mere drafting oversight" with the "failure to follow . . . [t]he Commissioner['s] duly promulgated regulations").

### 3. Dr. Rifkin's opinions

The ALJ also discounted the medical opinions of Plaintiff's treating psychiatrist Robert H. Rifkin, M.D. Dr. Rifkin completed a medical source statement dated August 6, 2019. Dr. Rifkin

noted that he had seen Plaintiff every three months over several years and had seen her recently. Dr. Rifkin noted that Plaintiff was diagnosed with bipolar disorder severe, mixed state, no psychosis, and that there had been a medically documented history of the existence of the mental disorder for over two years.  (Tr. 403).  Dr. Rifkin opined that Plaintiff had marked limitations in all four categories: understanding, remembering, or applying information; interacting with others; concentration, persistence, or maintaining pace; and adapting and managing oneself.  (Tr. 404). He also opined that Plaintiff would be absent from work more than three times a month.  (Tr. 403).

Dr. Rifkin completed a second medical source statement on August 21, 2020.  Dr. Rifkin's opinion remained unchanged.  He opined that Plaintiff was markedly limited in all four categories: understanding, remembering, or applying information; interacting with others; concentration, persistence, or maintaining pace; and adapting and managing oneself.  (Tr. 442).  And that Plaintiff would be absent from work more than three times a month.  (Tr. 441).

The ALJ discounted Dr. Rifkin's opinions as "not persuasive."  (Tr. 16).  The ALJ wrote the following:

> The undersigned finds that these opinions by Dr. Rifkin are not persuasive. The undersigned finds that the testimony of medical expert, Alfred Jonas, M.D., from the hearing is more consistent with the overall evidence, including [Plaintiff]'s admissions that she is functioning reasonably well when she is compliant with treatment and medication.  Dr. Jonas testified that such extreme findings are based, in large part, on [Plaintiff]'s subjective complaints, as there is no evidence in the record that any medical provider has ever observed [Plaintiff] behaving in a marked or extreme manner.

First, for the reasons discussed above, the ALJ should not have discounted Dr. Rifkin's opinions based on a finding that Dr. Jonas's testimony was more consistent with the evidence in the record.  Dr. Jonas's testimony was not supported by or consistent with the record as a whole in many significant respects.

Second, as the Commissioner admits in her brief, the ALJ failed to address the supportability factor when evaluating the persuasiveness of Dr. Rifkin's medical opinion.  (ECF

No. 17 at 11).  The ALJ did not discuss Dr. Rifkin's treatment notes or the records from his practice.  The ALJ provided no analysis as to whether Dr. Rifkin's opinions were supported by the record.

The Commissioner asserts this was harmless error because Dr. Rifkin's treatment notes did not provide support for the marked limitations. The Commissioner's argument is without merit. The Commissioner made a similar argument in Bonnett v. Kijakazi, where the ALJ failed to address the consistency factor.  859 F. App'x 19, 20 (8th Cir. 2021) (unpublished per curiam).  In Bonnett, the Commissioner argued the ALJ's decision should be affirmed even though the ALJ had not discussed the consistency factor, because it was evident from the record that the doctor's opinion was not consistent with the record.  The Eighth Circuit declined to affirm on the basis that the doctor's opinion was not consistent with other evidence in the record because the ALJ has made no such finding.  Id.  Under the regulations, as with consistency, an ALJ must address supportability when evaluating the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2).  The Court finds that the ALJ's failure to address supportability as to Dr. Rifkin's opinion is reversible legal error.  Bonnett, 859 F. App'x at 20.  See also Lucus, 960 F.3d at 1069 ("failure to comply with SSA regulations is more than a drafting issue, it is legal error").[4]

---

[4] The Court also finds there is evidence that Dr. Rifkin's opinion was supported by his treatment notes.  Plaintiff visited Dr. Rifkin approximately once every three months.  Earlier in her decision, the ALJ states that Plaintiff was "stable," and her symptoms were under control with psychotropic medications.  This statement is not consistent with Dr. Rifkin's treatment notes.  Dr. Rifkin prescribed Plaintiff various psychiatric medications including Alprazolam (anti-anxiety), Duloxetine (anti-depressant), Lurasidone (antipsychotic), Quetiapine (atypical antipsychotic), Topiramate (anticonvulsant), and Gabapentin (anticonvulsant).  (Tr. 407, 409, 411-13, 44-47).  In his treatment notes, there is evidence that Dr. Rifkin adjusted Plaintiff's medications a number of times because they were having limited results.  Dr. Rifkin noted observing abnormal moods and agitation, and Plaintiff was reported significant symptoms of bipolar discover and anxiety.  (Tr. 404, 413, 444).  ALJ did not discuss the fact that Plaintiff was on a significant number of medications to treat mental illness or the fact that her medications need to be adjusted a number of times.

### 4.  Dr. Akeson's opinion

On October 19, 2019, agency psychological consultant Steven Akeson, Psy.D., reviewed some of the evidence in the record as of that date, as part of the initial disability determination by the state agency. The evidence included Plaintiff's self-reported limitations and daily activities, work history, and medical records and opinions from her treating doctors Dr. Blumberg and Dr. Rifkin. (Tr. 143-48). Dr. Akeson noted that Plaintiff had a primary medically determinable impairment of Depressive, Bipolar and Related Disorders, which was severe, and a secondary medically determinable impairment of Anxiety and Obsessive-Compulsive Disorder, which was severe.  (Tr. 147).

Dr. Akeson found Plaintiff had moderate limitations in the four mental functioning domains: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Tr. 148).  Dr. Akeson wrote: "This claimant is noted to have a long ongoing history of treatment for bipolar /anxiety disorder.  She takes care of her children, is able to drive and shop.  Her most [sic] treatment notes show she is cooperative and friendly with stable mood and insight/judgment are fair."  (Tr. 149).  Dr. Akeson found that Plaintiff's alleged functional limitations were not supported by the exam findings and treatment history, but given her diagnoses, "it is reasonable to conclude [Plaintiff] has some functional limitations." (Id.).  Dr. Akeson opined Plaintiff could understand, remember, and carry out simple instructions, and could sustain concentration and persistence with at least simple repetitive tasks.  Also, it was his opinion that Plaintiff could adopt to settings that do not require frequent public contract or very close interaction with others in the workplace. (Tr. 153).

Dr. Akeson noted that expert opinion forms filled out by Drs. Blumberg and Rifkin were not consistent with their respective treatment notes.  (Tr. 153).  As to Dr. Blumberg's medical

opinion, Dr. Akeson stated generically, "The medical opinion contrasts with the other evidence in the record, which renders it less persuasive." Dr. Akeson also found the treatment records from Dr. Blumberg did not appear to be consistent with the form he filled out.[5]  (Tr. 153).  As for Dr. Rifkin, Dr. Akeson also wrote, "The medical opinion contrasts with the other evidence in the record, which renders it less persuasive," and that the treatment records he reviewed from Dr. Rifkin, which were from four visits, did not appear to be consistent with the form Dr. Rifkin filled out.  (Tr. 153-54).

The ALJ indicated she found Dr. Akeson's opinion persuasive, and relied on his opinion when determining Plaintiff's mental impairments in the third and fourth steps of her analysis.  The ALJ wrote:

> In October 2019, state agency evaluator, Steven Akeson, Psy.D, reviewed [Plaintiff]'s file [ ]. Dr. Akeson found that [Plaintiff] had moderate limitations in all areas of mental functioning. Dr. Akeson further opined that [Plaintiff] was capable of working with simple instructions and concentrating on simple, repetitive tasks.  [Plaintiff] was able to adapt to changes in a workplace with no frequent public contact or close interaction with others in the workplace. The undersigned finds that this opinion is persuasive because it is supported with a detailed explanation and citations to the objective record. This opinion is also consistent with [Plaintiff]'s mental health treatment history and self-reported activities of daily living, discussed above [in her decision].

(Tr. 16-17) (internal citations to the record omitted).

While an ALJ may generally rely on a State Agent's consultative opinion, in evaluating Dr. Akeson's opinion, the Court finds that the ALJ gave short shrift to the supportability and consistency factors.  Essentially, without discussing specifics, the ALJ simply states Dr. Akeson's opinion is supported by the record and is consistent with Plaintiff's mental health treatment history and daily activities.  But there are inconsistencies between evidence in the record and Dr. Akeson's opinion. For example, Dr. Akeson highlighted normal findings in Dr. Rifkin's treatment notes

---

[5]Like the ALJ, Dr. Akeson noted that Dr. Blumberg's treatment notes had limited legibility. (Tr. 149).

without pointing to or discussing notations that did not support his opinion.  Dr. Akeson only highlighted exams that supported his conclusion and did not address exams where Dr. Rifkin noted Plaintiff was regressing.  Dr. Akeson also did not address that Plaintiff had been seeing Drs. Rifkin and Blumberg for many years, and that she was on a number of psychiatric medications, which Dr. Rifkin changed with some frequency.  Dr. Akeson did not address the cyclical nature of bipolar disorder and how Plaintiff's ability to function might be impacted by episodes of mania and depression.

Dr. Akeson also selectively highlighted some of Plaintiff's described daily activities to support his conclusion, while failing to address them as whole.  Dr. Akeson summarily stated that Plaintiff is able to take care of her children, drive, and shop, despite having stated the following in the prior paragraph of his report:

> Severe anxiety has history of violent temper and panic attacks. Takes care of kids. Has difficulty with sleeping and personal care. Needs to be told by husband that she needs to shower. Does some cooking, cannot work at it for more than an hour. Is able to do laundry and dishes. Is able to drive, shop by computer but has a history of spending impulsively. Has difficulty getting along with others. Difficulty standing, walking, stair climbing, completing tasks, concentrating, following instructions, and getting along with others. Has to have instructions repeated multiple times and does not do well with written instructions. Has trouble with stress and change.

(Tr. 149). Dr. Akeson neglected to mention that Plaintiff's ability to manage changed over time, and there are reports in the record that she was unable get out of bed or was ignoring her children's needs.

Most importantly, while Dr. Akeson discounted the opinions of Plaintiff's two treating doctors as to her inability to function in a workplace, Dr. Akeson does not adequately explain the evidence upon which he based his own opinion as to Plaintiff's capacity to perform sustained work. Dr. Akeson opined Plaintiff was not significantly limited, among other things, in her ability to complete a normal workday and workweek without interruptions from psychologically based

symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; in her ability to accept instructions and respond appropriately to criticism from supervisors; in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  (Tr. 151-52).  Dr. Akeson, however, does not explain how he reached the conclusion that Plaintiff is not significantly impaired in these areas, or what he relied on to support this conclusion.  Certainly, there is evidence in the record that is inconsistent with Dr. Akeson's findings, which is not discussed by Dr. Akeson or the ALJ.

The Court disagrees with the ALJ's statement that Dr. Akeson supported his opinion with a detailed explanation and citations to the objective record.  On remand, the ALJ should more carefully consider the factors of supportability and consistency when weighing the persuasiveness of Dr. Akeson's opinion.

In sum, the Court finds the ALJ failed to follow the regulations and properly evaluate the persuasiveness of the opinions of Drs. Jonas, Blumberg, Rifkin, and Akeson under 20 C.F.R. § 404.1520c, which is reversible error.  Lucus, 960 F.3d at 1069; Brueggemann, 348 F.3d at 694.  On remand, the ALJ must reevaluate the persuasiveness of the four medical opinions taking into careful consideration the factors outlined in 20 C.F.R. § 404.1520c.  Moreover, in assigning weight to these four opinions, the ALJ must specifically discuss the factors of supportability and consistency as to each medical opinion.  The Court urges the ALJ to consider obtaining additional information from Dr. Blumberg, based on the fact that his treatment notes were nearly illegible, and other medical records, such as treatment records from Plaintiff's prior hospitalizations.

**V.     Conclusion**

The Court's task "is to determine whether the ALJ's decision 'complies with the relevant legal standards and is supported by substantial evidence in the record as a whole.'"  Halverson

25

v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010) (quoting Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008)).  The Court finds that it does not in this case.  For the reasons set forth above, the Court finds the ALJ improperly evaluated under the applicable regulations the persuasiveness of the medical opinions in the record. Therefore, the Court remands this matter to the Commissioner for further proceedings consistent with this Memorandum and Order.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Order.

A separate judgment will accompany this Memorandum and Order.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this  28th  day of March, 2023.